FILED
FEBRUARY 28, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 1201**

| | | |
|---|---|---|
| CMBB LLC | ) | |
| | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Jury Demand |
| | ) | |
| LOCKWOOD MANUFACTURING, INC., | ) | |
| JENNIFER M. BRYAN, and | ) | |
| CAINCO EQUIPAMENTOS PARA | ) | |
| PANIFICADO LTD. | ) | |
| | ) | |
| Defendants. | ) | |

**JUDGE SHADUR
MAGISTRATE JUDGE VALDEZ**

## COMPLAINT

Now comes the Plaintiff CMBB, LLC ("CMBB") and alleges as follows for its Complaint against Defendants Lockwood Manufacturing, Inc. ("Lockwood"), Jennifer M. Bryan, and Cainco Equipamentos para Panificaco Ltd. ("Cainco").

### PARTIES, JURISDICTION, AND VENUE

1. Lockwood is a Canadian corporation with its principal place of business located in Brantford, Ontario. Lockwood is a manufacturer and seller of commercial baking pans and conducts business in the United States and in Illinois.

2. Cainco is a Brazilian company that manufactures and sells commercial baking pans. Lockwood is a shareholder of Cainco and purchases commercial baking pans from Cainco for resale in the United States.

3. Ms. Bryan is employed by Lockwood as its National Sales Manager for the United States. In that position, Ms. Bryan markets commercial baking pans manufactured by Cainco and Lockwood in the United States.

370845.1

- 2 -

4. Upon information and belief, Ms. Bryan lives in McHenry County, Illinois and works in the State of Illinois.

5. CMBB is an Ohio limited liability company with its principal place of business located in Urbana, Ohio. CMBB is a manufacturer and seller of commercial baking pans and a direct competitor of Lockwood and Cainco in the United States and Canada.

6. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and CMBB and Defendants are citizens of different states.

7. Venue is proper in the Northern District of Illinois, in that all or part of the claims for relief against Defendants arose in this district and Defendant Bryan resides here.

## FACTUAL BACKGROUND

8. In or about October 2005, CMBB purchased certain assets of Chicago Metallic Corporation ("Chicago Metallic") related to its manufacture and sale of commercial baking pans. As part of the acquisition, CMBB paid well in excess of $1,000,000 to acquire Chicago Metallic's confidential information and trade secrets related to commercial baking pans (hereafter, "CMBB's Property"). CMBB's Property included information related to hundreds of customers that detailed prior transactions including quotes, purchase orders, terms of sale, type of commercial baking pans purchased, customer-specific equipment listings (which revealed what type of commercial baking pans the customer would need to purchase), unique features related to the commercial baking pans purchased, shop drawings for commercial baking pans sold to specific customers, customer specific requirements and customer contact information. In addition to the detailed customer information, these records as a whole showed which commercial baking pans were in the greatest demand.

9. Chicago Metallic expended considerable resources on its sales force to develop and maintain CMBB's Property over many years. Chicago Metallic also restricted access to CMBB's Property and did not share the information with third-parties including competitors and potential competitors. After the acquisition, CMBB has also maintained the confidentiality of CMBB's Property by restricting access to the information within CMBB. CMBB paid Chicago Metallic over $1,000,000 for CMBB's Property based on the competitive advantage provided CMBB by access to the confidential information contained therein.

10. The information contained in CMBB's Property is not generally known to the public. A competitor who obtained access to CMBB's Property would be able to unfairly compete because it would have access to CMBB's Property without having to expend the time and/or resources invested by Chicago Metallic and CMBB in developing, acquiring and maintaining it.

11. During the acquisition negotiations and immediately prior to the acquisition, Ms. Bryan was employed as Chicago Metallic's Marketing Manager.

12. As an employee of Chicago Metallic, Ms. Bryan was given access to CMBB's Property.

13. Chicago Metallic shared CMBB's Property with Ms. Bryan in confidence for use in her employment at Chicago Metallic.

14. In October 2005, Ms. Bryan left Chicago Metallic and was permitted to keep the laptop computer she had used in her job. In January 2006, Ms. Bryan began working for Lockwood as its National Sales Manager.

15. At her deposition in a case involving Lockwood and American Pan Company venued in the Southern District of Ohio, Ms. Bryan testified that prior to leaving Chicago

Metallic's employ, she accessed certain of CMBB's Property and copied it to her laptop. Ms. Bryan knew CMBB's Property constituted confidential information and/or trade secrets. Chicago Metallic did not know of or assent to Ms. Bryan taking CMBB's Property on her laptop.

16. In addition to or in the alternative to the allegations contained in paragraph 15, on information and belief, Ms. Bryan actually accessed and copied certain of CMBB's Property to her laptop in January 2006 after she began working for Lockwood. Ms. Bryan knew CMBB's Property constituted confidential information and/or trade secrets, and the access and copying were accomplished without the knowledge or assent of Chicago Metallic or CMBB.

17. During 2006, Ms. Bryan shared CMBB's Property with Lockwood's President, Patrick Murray. Mr. Murray shared CMBB's Property with Mario Casarin, Cainco's president. Mr. Murray, Mr. Casarin, Lockwood, and Cainco knew CMBB's Property was confidential and a trade secret.

18. Ms. Bryan, Lockwood, and Cainco maintain copies of CMBB's Property. At least one Lockwood employee has used and continues to use CMBB's Property to compete against CMBB.

### COUNT I – MISAPPROPRIATION OF TRADE SECRETS AGAINST LOCKWOOD, BRYAN AND CAINCO

19. CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18 as paragraph 19.

20. The Illinois Trade Secrets Act (the "ITSA") prohibits the misappropriation of a trade secret. 765 ILCS 1065 *et seq*. The ITSA defines a trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that;
>
> a. is sufficiently secret to derive economic value, actual or potential, from not being generally known

- 4 -

370845.1

    to other persons who can obtain economic value from its disclosure or use; and

  b. is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality

21. The ITSA defines misappropriation as:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of a person without express or implied consent by another person who: (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

22. Some of CMBB's Property, which Ms. Bryan took, used, retained, and knowingly shared with Lockwood, which Lockwood knowingly received, used, retained, and shared with Cainco, and which Cainco knowingly received, used, and retained, constitutes "trade secrets" under the ITSA.

23. Ms. Bryan, Lockwood, and Cainco's misappropriations were willful and malicious, entitling CMBB to exemplary damages and attorneys' fees under the ITSA.

370845.1

24.　　CMBB has been damaged by the violations of the ITSA in an amount to be proved at trial but in excess of $75,000.

## COUNT II – CONVERSION AGAINST BRYAN

25.　　CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18 as paragraph 25.

26.　　CMBB's Property, which Ms. Bryan took, used, retained, and knowingly shared with Lockwood, which Lockwood knowingly received, used, retained, and shared with Cainco, and which Cainco knowingly received, used, and retained, belongs to CMBB, and CMBB has the exclusive right to ownership, possession, and control thereof.

27.　　Ms. Bryan converted CMBB's Property by wrongful acts in contravention of CMBB's rights to ownership, possession, and control.

28.　　In converting CMBB's Property, Ms. Bryan disregarded the rights of CMBB because she knew or had reason to know that she did not have the right to retain CMBB's Property; Ms. Bryan knew or had reason to know that she did not have the right to use CMBB's Property for the benefit of herself or the other Defendants; and Ms. Bryan used CMBB's Property for her own benefit and the benefit of the other Defendants when she did not have the right to do so.

29.　　Ms. Bryan's actions were undertaken with wantonness, malice, and reckless indifference to CMBB's rights.

30.　　CMBB has been damaged by Ms. Bryan's conversion of CMBB's Property.

## COUNT III – CONSPIRACY TO COMMIT CONVERSION AGAINST LOCKWOOD, BRYAN, AND CAINCO

31.　　CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18, and 25 through 30 as paragraph 31.

32. Upon information and belief based in part on Ms. Bryan's relationship with both Lockwood and Cainco, Ms. Bryan's conversion of CMBB's Property was part of a plan (hereafter, the "Conspiracy") to which each of Ms. Bryan, Lockwood, and Cainco agreed or in which Ms. Bryan, Lockwood, and Cainco willfully participated to damage CMBB through the misappropriation and conversion of CMBB's Property and then using that information to gain a competitive advantage.

33. The Conspiracy was undertaken with wantonness, malice, and reckless indifference to CMBB's rights.

34. CMBB has been damaged by Defendants' conduct because said conduct has significantly diminished the value of CMBB's investment to acquire CMBB Property.

## COUNT IV – CONVERSION AGAINST LOCKWOOD AND CAINCO

35. CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 31 through 34 as paragraph 35.

36. Lockwood and Cainco converted CMBB's Property by wrongful acts in contravention of CMBB's rights to ownership, possession, and control.

37. In converting CMBB's Property, Lockwood and Cainco disregarded the rights of CMBB because they knew or had reason to know that they did not have the right to retain CMBB's Property; Lockwood and Cainco knew or had reason to know that they did not have the right to use CMBB's Property for their own benefit; and Lockwood and Cainco have used CMBB's Property for their own benefit when they did not have the right to do so.

38. Lockwood and Cainco's actions were undertaken with wantonness, malice, and reckless indifference to CMBB's rights.

370845.1

39. Further, by virtue of their agreement or participation in the conspiracy and their attempts to benefit therefrom, Lockwood and Cainco are chargeable with conversion.

40. CMBB has been damaged by Lockwood and Cainco's conversion of CMBB's Property.

**COUNT V – RESTITUTION AND UNJUST ENRICMENT AGAINST LOCKWOOD, BRYAN AND CAINCO**

41. CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18 as paragraph 41.

42. Lockwood, Ms. Bryan, and Cainco's unauthorized retention and use of CMBB's Property has unjustly and inequitably harmed CMBB and, conversely, benefited Lockwood, Ms. Bryan, and Cainco.

43. CMBB is entitled to recover the value of the benefits received by Lockwood, Ms. Bryan, and Cainco and the value of CMBB's harm due to the unjust enrichment and wrongful use and retention of CMBB's Property.

**COUNT VI – REPLEVIN AGAINST LOCKWOOD, BRYAN AND CAINCO**

44. CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18 as paragraph 44.

45. CMBB is entitled to exclusive possession and control of CMBB's Property but Defendants have wrongfully retained and used CMBB's Property to their benefit and CMBB's detriment.

WHEREFORE, CMBB respectfully requests that the Court grant judgment against each defendant for:

(1) compensatory damages in an amount exceeding $75,000;

(2) punitive damages in an amount to be determined at trial;

370845.1

- 9 -

(3) attorneys' fees and costs;

(4) the return and/or destruction of CMBB's Property, and;

(5) such other and further relief as the Court deems just and proper.

                                                Respectfully submitted,

                                                CMBB LLC

                                  By:    s/Staci Ketay Rotman - 06243241
                                           One of Its Attorneys

Edward N. Druck – 06206868
end@franczek.com
Staci Ketay Rotman – 06243241
skr@franczek.com
FRANCZEK SULLIVAN P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL  60606
(312) 986-0300

### JURY DEMAND

Plaintiff hereby demands a jury trial on its claims against Lockwood Manufacturing, Inc., Jennifer M. Bryan, and Cainco Equipamentos para Panificaco Ltd.

                                                s/ Staci Ketay Rotman

370845.1