### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CMBB LLC,

      Plaintiff,

        v.

Lockwood Manufacturing Inc., Jennifer M.
Bryan, and Cainco Equipamentos Para
Panificado, Ltd.,

      Defendant.

No.  08 cv 1201

Judge Shadur
Magistrate Judge Valdez

### LOCKWOOD MANUFACTURING INC.'S AND JENNIFER M. BRYAN'S
### RESPONSE TO COUNT I OF THE AMENDED COMPLAINT

Defendants Lockwood Manufacturing Inc. and Jennifer Bryan ("Defendants"), through

their attorneys, answer as follows Count I of the Amended Complaint:[1]

### ANSWER TO COUNT I
### (MISAPPROPRIATION OF TRADE SECRETS)

1.     Lockwood is a Canadian corporation with its principal place of business located
in Brantford, Ontario. Accordingly, for purposes of diversity jurisdiction, Lockwood is a citizen
of Canada. Lockwood is a manufacturer and seller of commercial baking pans and conducts
business in the United States and in Illinois.

**ANSWER:**    Defendants admit that Lockwood is incorporated under the laws of

Ontario, Canada and otherwise admit Paragraph 1.

2.     Cainco is a Brazilian corporation with its principal place of business located in
Bauru, Brazil. Accordingly, for purposes of diversity jurisdiction, Cainco is a citizen of Brazil.
Cainco manufactures and sells commercial baking pans. Lockwood is a shareholder of Cainco
and purchases commercial baking pans from Cainco for resale in the United States.

**ANSWER:**    Defendants admit Paragraph 2 but further state that Lockwood purchases

commercial baking pans from Cainco for resale not only in the United States.

3.    Ms. Bryan is employed by Lockwood as its National Sales Manager for the United States. In that position, Ms. Bryan markets commercial baking pans manufactured by Cainco and Lockwood in the United States.

**ANSWER:**    Defendants admit that Bryan is employed by Lockwood as its National Sales Manager and that her job duties include marketing commercial baking pans, including those manufactured by Cainco for Lockwood. Defendants deny the remainder of this paragraph.

4.    Upon information and belief, Ms. Bryan is now and was at the time this action was filed, a resident and citizen of the State of Illinois. Accordingly, for purposes of diversity jurisdiction, Ms. Bryan is a citizen of the State of Illinois.

**ANSWER:**    Defendants admit Paragraph 4.

5.    CMBB is an Ohio limited liability company with its principal place of business located in Urbana, Ohio. CMBB is a manufacturer and seller of commercial baking pans and a direct competitor of Lockwood and Cainco in the United States and Canada. CMBB's members are as follows: Russell T. Bundy, a citizen of the State of Ohio; Elizabeth A. Bundy, a citizen of the State of Ohio; Gilbert L. Bundy. a citizen of the State of Ohio; Russell T. Bundy, Jr., a citizen of the State of Ohio; William D. Bundy, a citizen of the State of Ohio who is currently living in the State of New York; and Robert A. Bundy, a citizen of the State of Ohio who is currently living in France. Accordingly, for purposes of diversity jurisdiction, CMBB is a citizen of the State of Ohio.

**ANSWER:**    Defendants lack sufficient knowledge or belief to admit or deny this paragraph.

6.    This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(3) because the amount in controversy exceeds $75,000 and CMBB and Ms. Bryan are citizens of different states and Lockwood and Cainco are citizens of foreign states.

**ANSWER:**    Defendants deny that this Court has jurisdiction over Cainco. Defendants lack sufficient knowledge or information to admit or deny whether the amount in controversy as alleged by Plaintiff exceeds $75,000. Defendants admit the remainder of this paragraph.

---

[1] Plaintiff has voluntarily dismissed the remaining counts. Defendant Cainco Equipamentos Para Panificado, Ltd. has moved to dismiss the action as to it on jurisdictional grounds.

7.     Venue is proper in the Northern District of Illinois, in that all or part of the claims for relief against Defendants arose in this district and Defendant Bryan resides here.

**ANSWER:**    Defendants admit only that certain allegation of the complaint involve Bryan's former employment, which occurred in Illinois.  Defendants lack sufficient knowledge or belief to admit or deny the remainder of this paragraph.

8.     In or about October 2005, CMBB purchased certain assets of Chicago Metallic Corporation ("Chicago Metallic") related to its manufacture and sale of commercial baking pans. As part of the acquisition, CMBB paid well in excess of $1,000,000 to acquire Chicago Metallic's confidential information and trade secrets related to commercial baking pans (hereafter, "CMBB's Property"). CMBB's Property included information related to hundreds of customers that detailed prior transactions including quotes, purchase orders, terms of sale, type of commercial baking pans purchased, customer-specific equipment listings (which revealed what type of commercial baking pans the customer would need to purchase), unique features related to the commercial baking pans purchased, shop drawings for commercial baking pans sold to specific customers, customer specific requirements and customer contact information. In addition to the detailed customer information, these records as a whole showed which commercial baking pans were in the greatest demand.

**ANSWER:**    Defendants deny that the information that is alleged to have been misappropriated by Bryan and Lockwood, and which is defined as "CMBB's Property" in the Amended Complaint, was either confidential, a trade secret, or the property of Chicago Metallic. Defendants lack sufficient knowledge or belief to admit or deny the remainder of this paragraph.

9.     Chicago Metallic expended considerable resources on its sales force to develop and maintain CMBB's Property over many years. Chicago Metallic also restricted access to CMBB's Property and did not share the information with third-parties including competitors and potential competitors. After the acquisition, CMBB has also maintained the confidentiality of CMBB's Property by restricting access to the information within CMBB. CMBB paid Chicago Metallic over $1,000,000 for CMBB's Property based on the competitive advantage provided CMBB by access to the confidential information contained therein.

**ANSWER:**    Defendants deny the first and second sentence of Paragraph 9.  Further answering, Defendants deny that the information that is alleged to have been misappropriated by Bryan and Lockwood and which is defined as "CMBB's Property" in the Amended Complaint,

was either confidential or a trade secret. Defendants lack sufficient knowledge or belief to admit or deny the truth of the remainder of this paragraph.

10.    The information contained in CMBB's Property is not generally known to the public. A competitor who obtained access to CMBB's Property would be able to unfairly compete because it would have access to CMBB's Property without having to expend the time and/or resources invested by Chicago Metallic and CMBB in developing, acquiring and maintaining it.

**ANSWER:**    Defendants deny Paragraph 10.

11.    During the acquisition negotiations and immediately prior to the acquisition, Ms. Bryan was employed as Chicago Metallic's Marketing Manager.

**ANSWER:**    Defendants admit only that Defendant Bryan was employed by CM Products, Inc., until on or about October 31, 2005. Defendants lack sufficient knowledge or belief to admit or deny the remainder of this paragraph.

12.    As an employee of Chicago Metallic, Ms. Bryan was given access to CMBB's Property.

**ANSWER:**    Defendants admit that Defendant Bryan had access to certain information of CM Products Inc. Defendants, however, deny that such information was either confidential or a trade secret. Defendants deny the remainder of Paragraph 12.

13.    Chicago Metallic shared CMBB's Property with Ms. Bryan in confidence for use in her employment at Chicago Metallic.

**ANSWER:**    Defendants deny Paragraph 13.

14.    In October 2005, Ms. Bryan left Chicago Metallic and was permitted to keep the laptop computer she had used in her job. In January 2006, Ms. Bryan began working for Lockwood as its National Sales Manager.

**ANSWER:**    Defendants admit that Bryan was permitted to keep the laptop computer she had used in her job when she left her employment with CM Products, Inc., and that in

4

January 2006 she began working for Lockwood as its National Sales Manager. Defendants deny the remainder of Paragraph 14.

15.    At her deposition in a case involving Lockwood and American Pan Company venued in the Southern District of Ohio, Ms. Bryan testified that prior to leaving Chicago Metallic's employ, she accessed certain of CMBB's Property and copied it to her laptop. Ms. Bryan knew CMBB's Property constituted confidential information and/or trade secrets. Chicago Metallic did not know of or assent to Ms. Bryan taking CMBB's Property on her laptop.

**ANSWER:**    Defendants deny Paragraph 15 as worded. Defendants admit that as part of her job while employed by CM Products, Inc., Ms. Bryan was permitted to and did access information and copy it to her laptop, as did many other employees.

16.    In addition to or in the alternative to the allegations contained in paragraph 15, on information and belief, Ms. Bryan actually accessed and copied certain of CMBB's Property to her laptop in January 2006 after she began working for Lockwood. Ms. Bryan knew CMBB's Property constituted confidential information and/or trade secrets, and the access and copying were accomplished without the knowledge or assent of Chicago Metallic or CMBB.

**ANSWER:**    Defendants deny Paragraph 16.

17.    During 2006, Ms. Bryan shared CMBB's Property with Lockwood's President, Patrick Murray. Mr. Murray shared CMBB's Property with Mario Casarin, Cainco's president. Mr. Murray, Mr. Casarin, Lockwood, and Cainco knew CMBB's Property was confidential and a trade secret.

**ANSWER:**    Defendants admit only the Defendant Bryan shared information with Patrick Murray that she had been allowed to keep on her laptop computer when she left her employment with CM Products, Inc., and that Murray shared such information with Cainco. Defendants, however, deny that they ever used this information in their business or that it had any competitive value to them or that it was either confidential or a trade secret. Defendants deny the remainder of Paragraph 17.

18.    Ms. Bryan, Lockwood, and Cainco maintain copies of CMBB's Property. At least one Lockwood employee has used and continues to use CMBB's Property to compete against CMBB.

**ANSWER:**    Defendants admit that they still possess copies of the information that Defendant Bryan had been allowed to keep on her laptop computer when she left her employment with CM Products, Inc. Defendants, however, deny that they ever used this information in their business or that it had any competitive value to them or that it was either confidential or a trade secret.  Defendants deny the remainder of Paragraph 18.

19.    CMBB hereby incorporates and reaffirms the allegations contained above in paragraphs 1 through 18 as paragraph 19.

**ANSWER:**    Defendants reallege their answers to paragraphs 1 through 18 as their answer to Paragraph 19.

20.    The Illinois Trade Secrets Act (the "ITSA") prohibits the misappropriation of a trade secret. 765 ILCS 1065 *et seq.* The ITSA defines a trade secret as:

> information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers that;
>
> a.    is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> b.    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality

**ANSWER:**    Defendants admit that the Illinois Trade Secrets Act contains the language cited in Paragraph 20.

21.    The ITSA defines misappropriation as:

> (1)    acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of a person without express or implied consent by another person who: (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I)   derived from or through a person who utilized improper means to acquire it;

(II)   acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use;

(III)   derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C)   before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

**ANSWER:**   Defendants admit that the Illinois Trade Secrets Act contains the language cited in Paragraph 21.

22.   Some of CMBB's Property, which Ms. Bryan took, used, retained, and knowingly shared with Lockwood, which Lockwood knowingly received, used, retained, and shared with Cainco, and which Cainco knowingly received, used, and retained, constitutes "trade secrets" under the ITSA.

**ANSWER:**   Defendants deny Paragraph 22.

23.   Ms. Bryan, Lockwood, and Cainco's misappropriations were willful and malicious, entitling CMBB to exemplary damages and attorneys' fees under the ITSA.

**ANSWER:**   Defendants deny Paragraph 23.

24.   CMBB has been damaged by the violations of the ITSA in an amount to be proved at trial but in excess of $75,000.

**ANSWER:**   Defendants deny Paragraph 24.

## ADDITIONAL DEFENSES

1.   The complaint fails to state a claim upon which relief can be granted.

2.   Plaintiff's claims are bared by principles of waiver and estoppel.

3.   Reasonable steps were not taken to preserve the confidentiality of the alleged trade secret information.

**WHEREFORE,** Defendants Lockwood Manufacturing, Inc. and Jennifer M. Bryan request that judgment be entered in their favor on Count I plus costs and such additional relief as this Court deems just.

**LOCKWOOD MANUFACTURING, INC., and JENNIFER M. BRYAN**

/s/ Anthony C. Valiulis
*One of Defendants' Attorneys*

Anthony C. Valiulis
Lorne T. Saeks
**Much Shelist Denenberg
    Ament & Rubenstein PC**
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60601
312-521-2000

8

773089_1

## CERTIFICATE OF SERVICE

Anthony C. Valiulis, an attorney, certifies that he caused **Defendants Lockwood Manufacturing Inc.'s and Jennifer M. Bryan's Response to Count I of the Amended Complaint** electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following recipients on this 30th day of April, 2008:

To:    Staci Ketay Rotman
       Franczek Sullivan PC
       300 S. Wacker Drive
       Suite 3400
       Chicago, Illinois 60606
       skr@franczek.com


                              **/s/ Anthony C. Valiulis**