IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CMBB LLC ) | |
| ) | |
| ) | Case No. 08 CV 1201 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Shadur |
| ) | |
| LOCKWOOD MANUFACTURING, INC., ) | |
| JENNIFER M. BRYAN, and ) | Magistrate Judge Valdez |
| CAINCO EQUIPAMENTOS PARA ) | |
| PANIFICADO LTD. ) | |
| ) | |
| Defendants. | |

**PLAINTIFF CMBB LLC'S RESPONSE TO DEENDANT CAINCO
EQUIPAMENTOS PARA PANIFICADO, LTD.'S MOTION TO DISMISS**

**I.   INTRODUCTION**

Defendant Cainco Equipamentos Para Panificado, Ltd. ("Cainco") is subject to personal jurisdiction in Illinois due to both its continuous and systematic business contacts with Illinois and its specific contacts with the forum that are directly related to CMBB's claims under the Illinois Trade Secrets Act. As detailed below, between January 17 and December 12, 2006, over 215 instant messages were exchanged between Lockwood Manufacturing Inc.'s ("Lockwood") employee in Illinois, Defendant Jennifer Bryan, and Cainco for the purpose of generating sales of Cainco products to Lockwood's Illinois office. Contrary to the declaration submitted by Cainco's president, Mario Casarin, those instant messages show that at least one known shipping container of Cainco's products was delivered to Lockwood's Illinois warehouse during 2006 and, most likely, more based upon statements made in these messages. Finally, the messages exchanged between Ms. Bryan, Cainco and other Lockwood employees show that Cainco was an active participant in Ms. Bryan's development of a "Lockwood" catalog containing mostly

378559.1

Cainco products. That catalog was then distributed to customers derived from the trade secret information that is at the heart of CMBB's allegations. Based on these activities, this Court has both general and specific jurisdiction over Cainco. And Cainco's motion to dismiss should therefore be denied.

II.  **STATEMENT OF FACTS**

   A.  **CMBB Acquisition of Chicago Metallic's Trade Secret Information**

As set forth in CMBB's Amended Complaint, in October 2005 CMBB purchased certain assets of Chicago Metallic Corporation ("Chicago Metallic") related to its manufacture and sale of commercial baking pans. (Amended Complaint, ¶ 8.) As part of the acquisition, CMBB paid well in excess of $1,000,000 to acquire Chicago Metallic's trade secrets related to its sale of commercial baking pans (hereafter, "CMBB's Property"). (Amended Complaint, ¶8.) CMBB's Property included information related to hundreds of customers that detailed prior transactions including quotes, purchase orders, terms of sale, type of commercial baking pans purchased, customer-specific equipment listings (which revealed what type of commercial baking pans the customer would need to purchase), unique features related to the commercial baking pans purchased, shop drawings for commercial baking pans sold to specific customers, customer specific requirements and customer contact information. (Amended Complaint, ¶ 8.)

   B.  **Jennifer Bryan Joins Lockwood And Obtains CMBB's Property**

During the negotiations leading to the acquisition of CMBB's Property, Ms. Bryan was employed as Chicago Metallic's Marketing Manager. (Amended Complaint, ¶ 11.) In October 2005, Ms. Bryan left Chicago Metallic and was permitted to keep the laptop computer she had used in her job. (Amended Complaint, ¶ 14.) In January 2006, Ms. Bryan began working for Lockwood as its National Sales Manager. (Amended Complaint, ¶ 14.) In a case between Lockwood and American Pan Company (an affiliate of CMBB) in the Southern District of Ohio,

Ms. Bryan testified that it was *Cainco's* President, Mario Casarin, who first phoned her to recruit her for a position with *Lockwood*. (Deposition of Jennifer M. Bryan on August 19, 2007 ("Bryan Dep.") at 12.)[1]

In that same deposition, Ms. Bryan testified that *prior* to leaving Chicago Metallic's employ in October 2005, she accessed certain of CMBB's Property and copied it to her laptop. However, after the hard drive of Ms. Bryan's laptop was imaged in response to a subpoena, a forensic computer examination revealed that the Chicago Metallic data was not actually loaded onto her laptop until January 18, 2006 – several weeks *after* she started employment with Lockwood. (Affidavit of Paul Webel ("Webel Aff.") at ¶ 6.)[2] Although several programs were executed in the twenty-four hours before the laptop's hard drive was copied which resulted in the destruction of some computer data, the forensic examination of Ms. Bryan's laptop still provided ample evidence of Cainco's significant contacts with Illinois through Ms. Bryan. (Webel Aff. at ¶¶ 3 and 4.)

      C.    **Cainco's Extensive Contacts With Illinois**

A keyword search of Ms. Bryan's laptop revealed 1,168 documents referencing "Cainco" and another 468 documents referencing "Mario Casarin," including 1,027 e-mail messages. (Webel Aff. at ¶ 5.) Due to the parties' agreed upon protocol for the forensic review and the scope of issues involved in the American Pan case, the substance of most of these documents were not produced. However, 215 instant messages between Ms. Bryan and Cainco were produced and these messages suffice to establish what the volume of the unproduced materials suggests – Cainco's contacts with Illinois were continuous and systematic, and directly related to CMBB's trade secret claims. (Webel Aff. at ¶ 7 and Exhibit A thereto.)

---

[1]  Referenced pages of the Bryan Dep. are attached as Exhibit 1.
[2]  The Webel Affidavit is attached hereto as Exhibit 2.

In his declaration, Mario Casarin admits that Lockwood is a customer of Cainco but claims that Cainco only delivers products to Lockwood's headquarters in Canada:

> Since 2006, Cainco has sold commercial baking pans to Lockwood Manufacturing, Inc. All pans sold to Lockwood are manufactured based upon specification [*sic*] provided to us by Lockwood. When the pans are completed they are delivered to Lockwood's headquarters in Ontario, Canada.

(Casarin Declaration at ¶ 9.) This claim is flatly contradicted by the instant messages from Ms. Bryan's laptop. For example, beginning with a message dated January 23, 2006, Ms. Bryan identified the location of Lockwood's warehouse in Ringwood, Illinois:

> Just wanted to update everyone on the address for our new warehouse in the US. It is only 10 minutes from my office and I will visit frequently once things start moving. … Warehouse: Lockwood Manufacturing 5201 Mann Drive Ringwood, IL USA 60072 Office: Jennifer Bryan Lockwood Manufacturing 2917 Virginia Avenue McHenry, Il USA 60050.

(Webel Aff. at ¶ 6, Exh. A p. 55.)

Additionally, in May, 2006, Lockwood's President, Patrick Murray and Ms. Bryan had the following exchange regarding the delivery of Cainco orders:

> [Murray]: If we get the sale we should increase the order with Cainco.
>
> \* \* \*
>
> Bryan: We definitely should increase our order if we get it.
>
> [Murray]: There is also a 2.5% duty if we ship from Brazil to Canada to US
>
> Bryan: Patrick, I don't think we can consider that if we want to compete with CM/APC. Aren't we shipping right to Ringwood? Where is Federal Bakers located?

(Webel Aff. at ¶ 6, Exh. A p. 46.) Thereafter, in July, 2006, Ms. Bryan, herself, confirmed receipt of a container from Cainco in an instant message sent to a Canadian Lockwood employee: "I know you just received a Cainco container and one is coming to Ringwood

[Illinois]." (Webel Aff. at ¶ 6, Exh. A p. 63.) One month later, she complained to the same Lockwood employee about a shipment of Cainco products:

> I did a walk through of the Cainco stuff and now she just did and neither of us found the item number needed for the Bake n Joy order. The shipment came with no kind of packing list, so I don't know if we received what we think we did … Can you get a packing list from someone at Cainco?

(Webel Aff. at ¶ 6, Exh. A p. 68-69.) Based on these messages, at least one container (and most likely more) bypassed Lockwood's Canadian headquarters and was delivered directly to Lockwood's Illinois warehouse.

In addition to the messages highlighted above, other messages indicate that Lockwood intended to sell far more than one container of Cainco's commercial baking pans through its Illinois warehouse. Indeed, Cainco's sales to its Illinois customer Lockwood (a reseller rather than a bakery or end user) may explain the carefully limiting language of Mr. Casarin's declaration:

> I am familiar with the books and records of Cainco. Cainco's business records reflect that since its inception Cainco has made two sales, totaling $22,664 and $7,260, respectively, in which Cainco manufactured baking pans for <u>bakeries</u> located in Illinois

(Casarin Declaration at ¶ 10) (emphasis added).

### D. Bryan's Development of a Joint Cainco/Lockwood Catalog Distributed To Customers Using CMBB's Property

In addition to selling directly to Lockwood's warehouse in Illinois, Cainco also had extensive contacts with Illinois that exploited CMBB's Property for the purpose of generating additional sales to Lockwood in Illinois and for Cainco itself. Almost immediately after starting work at Lockwood, Ms. Bryan began preparing a joint Cainco/Lockwood catalog with assistance and active participation from Gisela Casarin at Cainco. On January 17, 2006, Ms. Bryan first sent the following message to Patrick Murray at Lockwood:

> Pricelist is coming along good. Still need access to Cainco site to grab the catalog and picture files. I will contact Mario for that.

(Webel Aff. at ¶ 6, Exh. A p. 32.) Later that day she sent another message to Gisela Casarin:

> Can you send me the file for the catalog? Patrick [Murray] and I are going to use it as a base for the new Lockwood catalog.

(Webel Aff. at ¶ 6, Exh. A p. 17.) A few weeks later, Ms. Bryan informed Mr. Murray that she had asked Gisela to FedEx the file for the Cainco catalog to her directly so that she could have it made "into a Lockwood version for us." (Webel Aff. at ¶ 6, Exh. A p. 36.) In early May, 2006 Ms. Bryan updated Mr. Murray on the status of the "joint" catalog:

> Pictures are being loaded that she neeed [sic] and I am strill [sic] loading all the additions/deletions into the draft she created by combiining [sic] Lockwood/Cainco catalogs together.

(Webel Aff. at ¶ 6, Exh. A p. 42.) Then on May 17, 2006, Ms. Bryan asked Cainco for additional help on the catalog:

> Hi Gisela….. Need you [sic] urgent help if possible. We are finishing up the new catalog and need a couple of pictures from the blue Cainco catalog.

(Webel Aff. at ¶ 6, Exh. A p. 21.)

As the joint Cainco/Lockwood catalog neared completion, Ms. Bryan utilized CMBB's Property to help create the mailing list for soliciting business that would benefit both Cainco and Lockwood by generating sales of Cainco products for Lockwood's office in Illinois. On June 23, 2006, Ms. Bryan sent a most telling message to Mr. Murray:

> Hey there…. Still waiting for the last catalog proof to come back. … I am going through all of the CM [Chicago Metallic] stock customer sales data and looking up each customer on the internet to add them to our mailing list. I had item history and customer name, but no addresses. Time consuming, but I want to make sure we hit all of them when we do our mailing.[3]

---

[3] This message stands in stark contrast to the deposition testimony of Ms. Bryan and Mr. Murray (given before her laptop was subpoenaed and forensically examined) where both denied using Chicago Metallic data from Bryan's

(Webel Aff. at ¶ 6, Exh. A p. 49.)

### III.   ARGUMENT

#### A.   Standard of Review

CMBB bears the burden of proving jurisdiction. But it is only required to make a *prima facie* showing that jurisdiction exists. *Saylor v. Dyniewski*, 836 F.2d 341 (7th Cir. 1988). CMBB has met this burden.

In evaluating whether personal jurisdiction has been established, a court must accept all well-pleaded facts within the amended complaint as true, resolve all factual disputes in favor of the party asserting jurisdiction, and draw any reasonable inferences from those facts in favor of jurisdiction. *Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992). Here, the evidence and the pleadings provide ample support finding that this Court has personal jurisdiction over Cainco.

#### B.   The Court Has General Jurisdiction Over Cainco Because Cainco Does Business In Illinois

General jurisdiction over a foreign defendant is established when the foreign defendant has such continuous and systematic contacts with Illinois such that it would neither be unfair nor unreasonable, nor offend traditional notions of fair play or substantial justice, to have to defend itself in that particular locale. *See Mellon First United Leasing v. Hansen,* 301 Ill.App.3d 1041, 1048, 705 N.E.2d 121, 127 (2nd Dist. 1998); *International Shoe Co. Washington*, 326 U.S. 310, 316 (1995). Here, Cainco's deliberate and sustained efforts to obtain and develop business in Illinois and the thousands of communications in support of these efforts are more than enough to support this Court's exercise of jurisdiction over Cainco.

---

laptop to generate potential customer leads. (Bryan Dep. at 17/11-13; Deposition of Patrick Murray on July 17, 2007 ("Murray Dep.") at 22/10-16.) Referenced pages of the Murray Dep. are attached as Exhibit 3.

Significantly, in a case later followed by this Court, the Illinois First District Court of Appeals specifically recognized that a foreign company could do business in Illinois through a distributor. *Japax, Inc. v. Sodick Co.*, 186 Ill. App.3d at 665, 542 N.E.2d 792 (1989) *followed by FAIP North American v. Sistema s.r.l*, 2005 U.S. Dist. LEXIS 32798 at * 10, No. 05 C 4002 (N.D. Ill. Dec. 14, 2005) (attached here as Exhibit 4). In *Japax*, the Court explained:

> After cutting through some of the confusion that seems to be largely matters of form rather than substance, we conclude that Sodick Japan's EDM systems do not find their way into Illinois by happenstance, on an occasional basis. The circumstances under which Sodick Japan's products leaving the Japanese plant are initially sold, in Japan, to intermediaries who sell in the United States. Sodick Japan's products are distributed in the Midwest by KGK International, an Illinois corporation whose office is located in Arlington Heights.

542 N.E.2d at 796-797. Thus, the *Japax* Court concluded that:

> Here, Sodick Japan certainly appears to have targeted Illinois as a State in which it intended for its products to be sold, advertised and serviced.

542 N.E.2d at 798. As in *Japax*, Cainco's baking pans likewise did not find their way into Illinois or the U.S. by happenstance. Rather, Cainco systematically directed activities towards Illinois for the purpose of maximizing its sales through Lockwood's Illinois office and warehouse, thereby contradicting its claim that "Cainco has virtually *no* contact at all with Illinois." (Cainco Motion at 5.) And the hundreds of instant messages between Bryan and Cainco's principals (several of which are attached to this Response) reference additional phone calls, e-mail messages and Federal Express correspondence during 2006, alone. Together these communications highlight the breadth of Cainco's contacts with Illinois. In addition, the shipment of at least one container of goods directly from Brazil to Illinois plainly contradicts Mr. Casarin's declaration. With these facts in mind, Mr. Casarin's careful use of the phrase "bakeries located in Illinois" certainly suggests that Cainco has shipped far more goods to its customer Lockwood in Illinois since 2006 – especially in light of the aggressive joint marketing

effort to sell Cainco goods, through Lockwood, to former Chicago Metallic customers using CMBB's Property. Cainco's continuous and systematic efforts to market its goods through Lockwood's office in Illinois, therefore, supports the exercise of general jurisdiction over Cainco.

### C. This Court Has Specific Jurisdiction Over Cainco Because Its Contacts With The Forum Are Directly Related To CMBB's Trade Secrets Claims

As noted by Cainco in its motion, specific jurisdiction arises when a dispute is related to a defendant's minimum contacts with a forum. *Helicopteros Nationale de Columbis S.A. v. Hall*, 466 U.S. 408, 414, fn8 1984). Here, Cainco's minimum contacts with Illinois are both related to CMBB's trade secrets claims and sufficient to support specific personal jurisdiction over Cainco.

In his deposition, Lockwood's president admitted that Lockwood was a distributor for Cainco in the United States. (Murray Dep. at 128/17-24.) As explained, above, Lockwood operates a warehouse and employs Ms. Bryan in Illinois to market Cainco's products. More particularly, Cainco has had numerous contacts with Ms. Bryan in Illinois for the purpose of creating a combined Cainco/Lockwood catalog that was then mailed to Chicago Metallic's customers utilizing the customer database that is the heart of CMBB's trade secrets claims. In addition, Cainco has sold at least one container of commercial baking pans that were shipped into Lockwood's Illinois warehouse.[4] That delivery was directly related to the planned solicitation of Chicago Metallic's customers using the joint catalog and CMBB's Property. Thus, Cainco's contacts with Illinois are both substantial and directly related to CMBB's claims under the Illinois Trade Secrets Act such that this Court has specific jurisdiction over Cainco in this case.

---

[4] Even with the limited facts known at this time, it would not strain credulity to believe discovery is likely to confirm that more Cainco products were delivered directly to Illinois.

## IV.    **CONCLUSION**

The evidence demonstrates Cainco's extensive contacts with Illinois were both continuous and systematic and were directly related to the misappropriation and exploitation – for Cainco's benefit – of CMBB's Property.  As a result, this Court has both general and specific personal jurisdiction over Cainco. Accordingly, Cainco's Motion to Dismiss for lack of jurisdiction should be denied.

                                Respectfully submitted,

                                CMBB LLC

            By:    /s  Edward N. Druck    06206868
                                One of Its Attorneys

Edward N. Druck
Staci Ketay Rotman
FRANCZEK SULLIVAN P.C.
300 South Wacker Drive
Suite 3400
Chicago, IL  60606
(312) 986-0300

W. Evan Price, II (Ohio Bar No. 0056134)
BAILEY CAVALIERI LLC
One Columbus
10 West Broad Street, 21st Floor
Columbus, Ohio 43215-3422
Telephone:     (614) 221-3155
Telefax:          (614) 221-0479
evan.price@baileycavalieri.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that a true and correct copy of the foregoing **PLAINTIFF CMBB LLC'S RESPONSE TO DEFENDANT CAINCO EQUIPAMENTOS PARA PANIFCADO., LTD's MOTION DISMISS** to be filed using the CM/EFC system which will send notification of such filing to the following on this 5TH day of May, 2008:

>Anthony C. Valiulis
>Cassandra M. Crane
>Lorne Todd Saeks
>Much Shelist Denenberg Ament and Rubenstein PC
>191 North Wacker Drive
>Suite 1800
>Chicago, IL 60606

>>s/Staci Ketay Rotman - 06243241
>>Staci Ketay Rotman

378559.1