# EXHIBIT 1

```
                                    1
        IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
                     - - - - -

American Pan Company,        :

        Plaintiff,           :

   vs.                       :
                              Case No. 3:06 CV 0197
Lockwood                     : Judge Thomas M. Rose
Manufacturing, Inc.,
                             :
        Defendant.
                             :


                     - - - - -

        DEPOSITION OF JENNIFER M. BRYAN

                     - - - - -


         Taken at Bricker & Eckler LLP
              100 South Third Street
                Columbus, OH 43215
            July 19, 2007, 1:25 p.m.

                     - - - - -

              Spectrum Reporting LLC
   333 Stewart Avenue, Columbus, Ohio 43206
         614-444-1000 or 800-635-9071
              www.spectrumreporting.com

                     - - - - -
```

```
                                    2
 1          A P P E A R A N C E S
 2
    ON BEHALF OF PLAINTIFF:
 3
    Bailey Cavalieri
 4  10 West Broad Street, 21st Floor
    Columbus, OH 43215
 5  By W. Evan Price, II, Esq.
       Robert R. Dunn, Esq.
 6     R. Cliffton Gibbs, Esq.
 7
    ON BEHALF OF DEFENDANT:
 8
    Mueller, Smith & Matto
 9  7700 Rivers Edge Drive
    Columbus, OH 43235-1355
10  By Edward A. Matto, Esq.
11  and
12  Bricker & Eckler LLP
    100 South Third Street
13  Columbus, OH 43215
    By James P. Schuck, Esq.
14
15
16
17
18
19
20
21
22
23
24
```

```
                                    3
 1             Thursday Afternoon Session
 2                July 19, 2007, 1:25 p.m.
 3                     - - - - -
 4             S T I P U L A T I O N S
 5                     - - - - -
 6       It is stipulated by counsel in attendance that
 7  the deposition of Jennifer M. Bryan, a witness
 8  herein, called by the Plaintiff for
 9  cross-examination, may be taken at this time by
10  the notary pursuant to notice and subsequent
11  agreement of counsel that said deposition may be
12  reduced to writing in stenotypy by the notary,
13  whose notes may thereafter be transcribed out of
14  the presence of the witness; that proof of the
15  official character and qualification of the notary
16  is waived.
17                     - - - - -
```

```
                                    4
 1                  I N D E X
 2  Examination By                          Page
 3  Mr. Dunn - Cross                          5
    Mr. Matto - Cross                        56
 4
 5
 6  Plaintiff's Exhibits                    Page
 7  7 - Chicago Metallic Ordering Information  39
        For Dealers and Distributors
 8
    8 - Custom Pan Pricing                   39
 9
    9 - Popular Pan Size Pricelist           39
10
11
12
13
14
15
16
17
18
19
20
21
22
        (Exhibits attached to original transcript.)
23
24
```

Page 9

```
 1  Q.      Spell that last name.
 2  A.      S-C-M-I-D-T.
 3  Q.      Who else at Chicago Metallic had access
 4  to these PDF files?
 5  A.      All of the sales staff, all the --
 6  well, all the sales staff in Lake Zurich and then
 7  the engineers in Tennessee.
 8  Q.      Would Mr. Rick Barton have had access
 9  to these documents?
10  A.      Yes, he did.
11  Q.      Did Mr. Barton know that you had these
12  documents on your laptop?
13  A.      Yes, he did.
14  Q.      Are these the types of documents,
15  Ms. Bryan, that were compiled by you during the
16  course and scope of your employment at Chicago
17  Metallic?
18  A.      Yes.
19  Q.      When you left Chicago Metallic, did you
20  -- strike that.
21          Did anyone offer or request that you
22  return these documents?
23  A.      No.
24  Q.      Did you discuss the fact that those
```

Page 10

```
 1  documents were on your computer with Mr. Barton?
 2  A.      No.
 3  Q.      What type of computer do you use?
 4  A.      It's a Sony Viao laptop.
 5  Q.      You used that Sony at Chicago Metallic?
 6  A.      Uh-huh.  Yes.
 7  Q.      And you still have that same computer?
 8  A.      Yes, I do.
 9  Q.      Did Mr. Barton allow you to take that
10  computer when you left Chicago Metallic?
11  A.      Yes.
12  Q.      You had a conversation with him about
13  that?
14  A.      Yes.  He allowed the other sales staff
15  also to keep their laptop.  Specifically, Bill
16  McCoy and Mike Cornelius.
17          MR. PRICE:  What was that second name?
18  A.      Bill McCoy and Mike Cornelius.
19  Q.      Was there ever a discussion about any
20  of these documents being on the computer?
21  A.      No.
22  Q.      Are these documents still on your
23  computer?
24  A.      Yes.
```

Page 11

```
 1  Q.      Are these documents located anywhere
 2  else other than on your computer?
 3  A.      I would assume at the CM Products -- on
 4  the CM Products network and individual laptops.
 5  Q.      The individual laptops of Chicago
 6  Metallic employees?
 7  A.      Well, the only Chicago Metallic
 8  employee would be Bill McCoy, who stayed on with
 9  American Pan, and then Mike Cornelius, who's still
10  with CM Products, which is -- I worked for CM
11  Products.
12  Q.      Other than that, do you know if those
13  documents are located anywhere else?
14  A.      No, not other than that and the
15  network.
16  Q.      What date did you leave Chicago
17  Metallic?
18  A.      The first week of October 2005.
19  Q.      Now, after you left Chicago Metallic in
20  October of 2005, you subsequently took a job at
21  Lockwood, correct?
22  A.      I gave my notice about a month prior to
23  the acquisition, and I then went to a company
24  called Focus Products Group, which is in the
```

Page 12

```
 1  housewares industry.
 2  Q.      When did you leave Focus Products
 3  Group?
 4  A.      I was there for about two months before
 5  coming to Lockwood.  So -- say December 1st of
 6  2005, approximately.
 7  Q.      December 1st of 2005 you were hired by
 8  Lockwood?
 9  A.      Officially started with Lockwood
10  January 1st of 2006.
11  Q.      How did you find your job with
12  Lockwood?
13  A.      I received a phone call from Mario
14  Casarin and Patrick Murray.
15  Q.      When was that phone call?
16  A.      Sometime in November 2005.
17  Q.      Tell me about that phone call, the
18  substance of it.
19  A.      The nature was just to ask if I would
20  be interested in employment.
21  Q.      Who initiated that call?
22  A.      I believe the first call came from
23  Mario Casarin.
24  Q.      Did you know Mario prior to that phone
```

**Page 17**

1  Q.    You would reference them for custom
2  jobs in your employment at Lockwood?
3  A.    Yes, for pan specifications.
4  Q.    Now, when you say specifications,
5  pricing or sizing or -- describe for me what you
6  mean by referencing.
7  A.    These are custom products, so I
8  referenced them for the pan specifications for
9  measurements and features that went on the pans in
10 lieu of acquiring a sample from the customer.
11 Q.    Did you ever use these documents for
12 leads with customers?
13 A.    No.
14 Q.    Since you joined Lockwood, have you
15 shared these documents with anyone other than
16 Mr. Murray?
17 A.    No.
18 Q.    You haven't shared them with anyone at
19 Lockwood or outside of Lockwood?
20 A.    No.  There may have been maybe one
21 drawing that I've sent to Mario.  But, no, not the
22 extent of the files, no.
23 Q.    You haven't shared these documents with
24 any third parties?

**Page 18**

1  A.    No.
2  Q.    Let's go back to when Mr. Murray
3  learned of these documents.  Was that through a
4  specific conversation with you?
5  A.    I believe it was just in the midst of a
6  job or a quote we were being asked to do, and I
7  just said I'd look back on some of my history and
8  found a drawing that related -- or part of a
9  custom job that related to something we were
10 working on, and that kind of led to the files that
11 I had.
12 Q.    Well, walk me through that conversation
13 and how Mr. Murray came to know that you had all
14 of these documents.
15 A.    I don't recall the conversation, other
16 than we were working on a custom project, and I
17 just searched some of my history and, you know,
18 found a drawing that helped us spec the pan.
19 Q.    Did he request that you give those
20 documents to me?
21 A.    He requested them much later on,
22 probably after a year of my employment.
23 Q.    When was that initial conversation?
24 A.    I don't recall.

**Page 19**

1  Q.    Was it shortly after you were hired by
2  Lockwood?
3  A.    I'd say probably several months into my
4  employment.
5  Q.    Several meaning three or four?
6  A.    Say three plus.
7  Q.    But you did not give the entire files
8  to Mr. Murray until approximately a year after
9  your hiring?
10 A.    Yes.
11 Q.    And tell me about how you came to give
12 those -- the entire file to him.
13 A.    He requested them.
14 Q.    Was it in the context of a particular
15 job or had he just recalled that you had these?
16 A.    He recalled that he had them.  I don't
17 know why he asked for them, but --
18 Q.    Did he call you up and ask for them?
19 A.    It was during one of my visits to
20 Canada, and I just copied them on a little zippy
21 thing.
22       MR. PRICE:  Thumb drive?
23       THE WITNESS:  Yeah.
24 Q.    Did you ask him why he needed them?

**Page 20**

1        MR. MATTO:  Objection.  He didn't --
2  there's no indication that he said he needed them.
3  Q.    Did he tell you why he wanted them?
4  A.    No.  He asked -- he just asked for a
5  copy of them.
6  Q.    Did you ask him why he wanted them?
7  A.    No.
8  Q.    Did you feel at liberty to share the
9  documents with him?
10 A.    Yes.
11 Q.    Why?
12 A.    They're outdated, and I just figured
13 they would be helpful for reference.
14 Q.    Helpful to Lockwood?
15 A.    Helpful in timesaving for reference of
16 pan specifications.
17 Q.    For Lockwood?
18 A.    Yes.
19 Q.    Now, while you were employed at Chicago
20 Metallic, did you ever share these documents with
21 any competitors?
22 A.    No.
23 Q.    Would you have felt at liberty to do
24 so?

```
 1   State of Ohio       :        C E R T I F I C A T E
 2   County of Franklin: SS
 3        I, Stacy Rowley, a Notary Public in and for the
 4   State of Ohio, certify that  Jennifer M. Bryan
 5   was by me duly sworn to testify to the whole truth
 6   in the cause aforesaid; testimony then given was
 7   reduced to stenotype in the presence of said
 8   witness, afterwards transcribed by me; the
 9   foregoing is a true record of the testimony so
10   given; and this deposition was taken at the time
11   and place specified on the title page.
12        Pursuant to Rule 30(e) of the Fed. R. Civ. P.,
13   the witness and/or the parties have not waived
14   review of the deposition transcript.
15        I certify I am not a relative, employee,
16   attorney or counsel of any of the parties hereto,
17   and further I am not a relative or employee of any
18   attorney or counsel employed by the parties hereto,
19   or financially interested in the action.
20        IN WITNESS WHEREOF, I have hereunto set my hand
21   and affixed my seal of office at Columbus, Ohio, on
22   August 1, 2007                          .
23   Stacy M. Rowley
24   Stacy Rowley, Notary Public - State of Ohio
     My commission expires August 6, 2006.
```