# EXHIBIT 3

Case 1:08-cv-01201   Document 28-4   Filed 06/05/2008   Page 1 of 5

## Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
- - - - -

American Pan Company,       :

    Plaintiff,              :

    vs.                     :
                              Case No. 3:06 CV 0197
Lockwood                    : Judge Thomas M. Rose
Manufacturing, Inc.,
                            :
    Defendant.
                            :

- - - - -

VIDEOTAPED DEPOSITION OF PATRICK MURRAY
- - - - -

Taken at Bricker & Eckler LLP
100 South Third Street
Columbus, OH 43215
July 17, 2007, 10:05 a.m.

- - - - -

Spectrum Reporting LLC
333 Stewart Avenue, Columbus, Ohio 43206
614-444-1000 or 800-635-9071
www.spectrumreporting.com

- - - - -

## Page 2

APPEARANCES

ON BEHALF OF PLAINTIFF:

   Bailey Cavalieri
   10 West Broad Street, 21st Floor
   Columbus, OH 43215
   By W. Evan Price, II, Esq.
      Robert R. Dunn, Esq.
      R. Cliffton Gibbs, Esq.

ON BEHALF OF DEFENDANT:

   Mueller, Smith & Matto
   7700 Rivers Edge Drive
   Columbus, OH 43235-1355
   By Edward A. Matto, Esq.
   and
   Bricker & Eckler LLP
   100 South Third Street
   Columbus, OH 43215
   By James P. Schuck, Esq.

ALSO PRESENT:
   Videographer - Jeremy Dineen
   Gilbert Bundy

## Page 3

                    Tuesday Morning Session
                    July 17, 2007, 10:05 a.m.
                              - - - - -
                         S T I P U L A T I O N S
                              - - - - -

    It is stipulated by counsel in attendance that
the deposition of Patrick Murray, a witness
herein, called by the Plaintiff for
cross-examination, may be taken at this time by
the notary pursuant to notice and subsequent
agreement of counsel that said deposition may be
reduced to writing in stenotypy by the notary,
whose notes may thereafter be transcribed out of
the presence of the witness; that proof of the
official character and qualification of the notary
is waived.
                              - - - - -

## Page 4

                        I N D E X

Examination By                                Page
Mr. Price - Cross                                6


Plaintiff's Exhibits                          Page
1 - ABC Restaurant                               7
2 - Agreement, 8-6-93                           45
3 - Sales Agency Agreement                      45
4 - Lockwood website                            36
5 - Lockwood invoices                          107
6 - Invoices                                   131


(Exhibits attached to original transcript.)

**Page 21**

1  Q. on Ms. Bryan's computer? Is that one of them?
2  A. Three.
3  Q. Okay. Presumably there may be copies
4  related to the e-mails you received on your
5  computer?
6  A. Yes.
7  Q. Okay. Apart from those, you also have
8  two sets that have been printed out?
9  A. I'm referring to electronic copies.
10 Q. Okay. So you have two electronic
11 copies on your computer, Ms. Bryan's computer.
12 Where is the third copy?
13 A. Janice Cassidy.
14 Q. Okay. Are there any hard copies?
15 A. Not to my knowledge.
16 Q. Okay. Since she was hired by Lockwood,
17 has Ms. Bryan used the Chicago Metallic documents
18 as part of her work for Lockwood Manufacturing?
19 A. Yes.
20 Q. Okay. What do you understand that she
21 has used those documents for in the course and
22 scope of her employment at Lockwood?
23 A. She gave us a rough idea of what the
24 prices are being used in the U.S.

**Page 22**

1  Q. Okay. And at that point, were you
2  seeking to expand your market into the United
3  States?
4  A. We were interested in expanding our
5  market in the U.S. prior to hiring Jenny Bryan.
6  Q. Okay. But as -- prior to hiring her,
7  but it was after she was hired you were still
8  interested in doing so, correct?
9  A. Correct.
10 Q. And so she shared with you pricing
11 information using the Chicago Metallic documents,
12 correct?
13 A. Correct.
14 Q. Did she also use them to generate
15 potential customer leads?
16 A. No.
17 Q. Do you know what else she has used them
18 for in the course and scope of her employment at
19 Lockwood?
20 A. No.
21 Q. Have you discussed with her what she
22 has used them for?
23 A. No.
24 Q. Okay. Apart from yourself and

**Page 23**

1  Ms. Bryan and Ms. Cassidy, has anyone else at
2  Lockwood Manufacturing used or reviewed the
3  Chicago Metallic documents?
4  A. No.
5  Q. Okay. Is it your position that
6  Lockwood Manufacturing is entitled to retain the
7  Chicago Metallic documents it received from
8  Ms. Bryan?
9       MR. MATTO: Objection to the extent
10 you're asking for a legal conclusion.
11      MR. PRICE: Yeah. I'm not asking for a
12 legal conclusion. I'm just asking what his --
13 A. Yes.
14 Q. Okay. Can you explain to me why you
15 believe Lockwood Manufacturing is entitled to
16 retain those records?
17 A. I didn't pay for them. I didn't
18 request them. They were offered to me.
19 Q. Okay.
20 A. I'm not using them for any illegal
21 purpose. So there's no reason -- and the laptop
22 was given to Jenny Bryan by the owner of Chicago
23 Metallic prior to the sale completing.
24 Q. Okay. And that was Mr. Barton?

**Page 24**

1  A. Correct.
2  Q. And to your knowledge, or based on what
3  Ms. Bryan has told you, was Mr. Barton aware that
4  all of this information was on the laptop when he
5  gave it to her?
6  A. I don't know what Mr. Barton was aware
7  of.
8  Q. Okay. Well, I'm asking what Ms. Bryan
9  told you.
10 A. She inferred that Mr. Barton was aware
11 of it.
12 Q. Okay. Mr. Murray, did you review any
13 documents in preparation for your deposition here
14 today?
15 A. Yes.
16 Q. What did you review?
17      MR. MATTO: I'm going to object to the
18 extent -- are you asking outside the scope of
19 meeting with us?
20      MR. PRICE: Yeah.
21      MR. MATTO: Okay.
22      MR. PRICE: If he reviewed any
23 documents.
24      MR. MATTO: Outside -- yeah. I'm going

Page 125

1  A.     No.
2  Q.     Now, you said Cainco was never your
3  primary supplier, correct?
4  A.     We bought from both companies.
5  Q.     From both Cainco and American Pan?
6  A.     And Premier Pan.
7  Q.     And Premier Pan. But once you
8  terminated the agreement with American Pan, did
9  Cainco then become your primary supplier?
10 A.     Yes.
11 Q.     Do you have any -- apart from issuing
12 purchase orders and everything else, do you have
13 any more extended relationship or contractual
14 relationship with Cainco?
15 A.     Yes.
16 Q.     Okay. What is that relationship?
17 A.     Shareholder.
18 Q.     You are a shareholder in Cainco
19 personally?
20 A.     Lockwood.
21 Q.     Or Lockwood is.
22         When did Lockwood become a shareholder
23 in Cainco?
24 A.     May 2005.

Page 126

1  Q.     How did that come about? How did that
2  wind up happening? What were the circumstances
3  that led to Lockwood deciding to purchase shares
4  in Cainco?
5  A.     I don't understand the question. Was
6  it why did Lockwood do it?
7  Q.     Yeah.
8  A.     To have some control over our supply.
9  Q.     Okay. Let me ask you this: Did
10 Lockwood just buy the shares on an exchange, on a
11 publically traded exchange, like call up a broker?
12 A.     No.
13 Q.     Did you purchase -- did Lockwood
14 purchase the shares directly from Cainco?
15 A.     Yes.
16 Q.     Okay. How did Lockwood learn that the
17 shares were available for purchase?
18 A.     I spoke to him.
19 Q.     Okay.
20 A.     I spoke to Mario Casarin.
21 Q.     Okay. Could you tell me how that
22 conversation went?
23 A.     I don't really remember it
24 specifically. I've had a lot of conversations

Page 127

1  with Mario. Specifically, I don't remember it.
2  But probably I offered, "Would you be willing to
3  sell some shares in your company?"
4  Q.     Or "I'd be interested in investing in
5  it"?
6  A.     Something along those lines, I would
7  imagine.
8  Q.     Okay. And when did -- when was that
9  subject first raised of the potential of Lockwood
10 investing in Cainco?
11 A.     October of 2003.
12 Q.     Of '03?
13 A.     Correct.
14 Q.     Okay. What percentage of Cainco did
15 Lockwood acquire in May of 2005?
16 A.     50 percent.
17 Q.     50 percent.
18 A.     Excuse me.
19 Q.     Is there a contractual relationship
20 between Cainco and Lockwood, sort of a rep
21 agreement or any kind of a master agreement that
22 governs the party's sale, or is it just purchase
23 order by purchase order?
24 A.     I don't really remember.

Page 128

1  Q.     You don't remember?
2  A.     I'd have to review it.
3  Q.     Do you know if there is any contract,
4  apart from purchase orders and individual
5  transactions, you're not sure whether there is any
6  kind of contract between Cainco and Lockwood?
7  A.     I'm not sure of its contents. There's
8  a lot of paper.
9  Q.     I didn't -- I didn't ask about
10 contents. I was just asking --
11 A.     There would be some agreement.
12 Q.     Agreement?
13 A.     Of some form.
14 Q.     Okay. Is it a rep agreement? I mean,
15 is -- is Lockwood the representative for Cainco?
16 A.     No. I -- not that I remember, no.
17 Q.     Is there any particular territory
18 within which you are allowed to sell Cainco
19 products?
20 A.     Well, Canada.
21 Q.     Okay.
22 A.     Northeast and the northwest.
23 Q.     Of the United States?
24 A.     Correct.

```
 1   State of Ohio        :         C E R T I F I C A T E
 2   County of Franklin: SS
 3       I, Stacy M. Rowley, a Notary Public in and for
 4   the State of Ohio, certify that Patrick Murray was
 5   by me duly sworn to testify to the whole truth in
 6   the cause aforesaid; testimony then given was
 7   reduced to stenotype in the presence of said
 8   witness, afterwards transcribed by me; the
 9   foregoing is a true record of the testimony so
10   given; and this deposition was taken at the time
11   and place specified on the title page.
12       Pursuant to Rule 30(e) of the Fed. R. Civ. P.,
13   the witness and/or the parties have not waived
14   review of the deposition transcript.
15       I certify I am not a relative, employee,
16   attorney or counsel of any of the parties hereto,
17   and further I am not a relative or employee of any
18   attorney or counsel employed by the parties hereto,
19   or financially interested in the action.
20       IN WITNESS WHEREOF, I have hereunto set my hand
21   and affixed my seal of office at Columbus, Ohio, on
22   July 20, 2007.
23   _____
24   Stacy M. Rowley, RPR, Notary Public - State of Ohio
     My commission expires August 6, 2011.
```