**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **CMBB LLC,** | |
|     Plaintiff, | |
|     v. | No. 08 cv 1201 |
| **Lockwood Manufacturing Inc., Jennifer M. Bryan, and Cainco Equipamentos Para Panificado, Ltd.,** | Judge Shadur<br>Magistrate Judge Valdez |
|     Defendant. | |

## **DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

Defendants Lockwood Manufacturing Inc. ("Lockwood") and Jennifer Bryan ("Bryan"), by their attorneys, move this Court to enter a protective order limiting discovery until this Court can determine whether Plaintiff CMBB, LLC ("CMBB") ever acquired any property protected by the Illinois Trade Secrets Act.

Based on CMBB's answers to Defendants' requests to admit, as well as the testimony elicited in another matter involving Lockwood and a party related to CMBB, there is more than sufficient evidence to suggest that Plaintiff CMBB has no basis to allege an enforceable trade secret under Illinois law. Nevertheless, Plaintiff seeks extensive and costly discovery from Defendants relating to its alleged use of such property and relating to Lockwood's customers, all of which will be useless and a waste of time and expense if Plaintiff CMBB cannot establish that it has any rights to enforce.

In support hereof, Defendants state as follows:

### **BACKGROUND**

1. Although CMBB originally filed a six count complaint, all counts except for Count I (misappropriation of trade secrets under the Illinois Trade Secrets Act) have been

voluntarily dismissed. With respect to its remaining count, CMBB contends that in October 2005, CMBB purchased certain assets of Chicago Metallic Corporation ("Chicago Metallic") relating to the sale and manufacturing of commercial baking pans, including alleged confidential and trade secret information related to commercial baking pans. (Compl., ¶8.)

2. As part of its claim, CMBB alleges that Chicago Metallic purportedly took reasonable steps to maintain the confidentiality of this information (which it refers to as "CMBB's Property") by "restrict[ing] access to CMBB's Property and [by not sharing] the information with third parties including competitors and potential competitors." (Compl., ¶9.)

3. According to CMBB, Jennifer Bryan was formerly employed by Chicago Metallic and was permitted to keep the laptop computer she used in her job when she left her job. CMBB, however, contends that Bryan's laptop contained confidential and proprietary information belonging to Chicago Metallic that Chicago Metallic allegedly did not know of or agree to let Bryan keep. (Compl., ¶15.) CMBB further alleges that Bryan supposedly shared such information with Lockwood. (Compl., ¶16.)

### DEFENDANTS REQUESTS TO ADMIT

4. Defendants recently served CMBB with requests to admit. In its responses, CMBB has made admissions that raise serious doubt as to the viability of its claims against Defendants. (Attached as Exhibit A is a copy of CMBB's Responses to Defendants' Requests to Admit.). Specifically, CMBB has now conceded the following facts:

(a) Bryan did not have a written agreement[1] relating to the confidentiality or non-disclosure of any of the property identified in paragraph 8 of the Complaint (Req. to Admit Nos. 17 and 19.);

---

[1] Bryan was employed by CM Products, Inc., which shared common ownership with Chicago Metallic.

2

(b) Bryan did not have a written agreement specifying that any of the property identified in paragraph 8 of the Complaint was considered a trade secret (Req. to Admit Nos. 18 and 20);

(c) Bryan's supervisor, Richard Barton ("Barton"), knew that prior to Bryan's termination of employment Bryan kept information relating to Chicago Metallic on the Laptop, including information relating to its customers (Req. to Admit No. 25);

(d) Barton told Bryan that she could keep the Laptop after her employment was terminated in October 2005 from CM Products, Inc. (Req. to Admit No. 26);

(e) Barton did not ask Bryan to remove any information form the Laptop as a condition for her to keep the Laptop after her employment was terminated in October 2005 from CM Products, Inc. (Req. to Admit No. 27).

### RICHARD BARTON'S TESTIMONY

5. Although CMBB claims in its response to Request to Admit No. 27 that Barton merely did not "recall" having asked Bryan whether he asked her to remove any information from her laptop, at his deposition given in the case *American Pan Company vs. Lockwood Manufacturing, Inc.*, Case No. 3:06-cv-197 (United States District Court for Southern District of Ohio, Western Division at Dayton), Barton did not say he did not recall:

> Q. Okay. And you were aware, were you not, that as an employee like most other employees, her laptop contained various information relating to Chicago Metallic and its business, right?
>
> A. She had information on her laptop that all employees – go ahead.
>
> Q. The answer is yes?
>
> A. The answer is yes.
>
> Q. Okay. Did you instruct her to strip her laptop before she could take it when you gave it to her?
>
> A. I [sic] normal practice is the HR department would be working with the person who's leaving with the company and making sure if they're given a laptop, it should be stripped out.
>
> Q. And do you know whether or not the HR department stripped her laptop?
>
> A. I believe they did not.

3

> Q. Any why not?
>
> A. They should have.
>
> Q. Okay. So the HR Department's responsibility was to have stripped that laptop according to you?
>
> A. Yes.
>
> Q. And did you give that laptop to her with instructions to go to the HR Department?
>
> A. I did not.

See attached Exhibit B, pgs. 42 – 43.[2]

6. Accordingly, based on Barton's testimony there is little dispute that neither he nor human resources asked Bryan to strip her computer of any purported confidential information.

### CHICAGO METALLIC'S FAILURE TO PROTECT ITS CUSTOMER FILES

7. CMBB has also admitted that Chicago Metallic and its affiliate, CM Products, Inc., did not take steps to maintain the confidentiality of its customer information internally:

   (a) CMBB admitted that customer information and records were stored by Chicago Metallic Corporation and CM Products, Inc., on a central computer network.

   (b) CMBB admitted further that Chicago Metallic and CM Products, Inc. only limited access to this information to the public or competitors; they did not they limited access internally to employees generally.

Req. to Admit Nos. 30 through 33.[3]

8. The weakness of CMBB's claim under the Trade Secrets Act is further highlighted by its admission to having no knowledge whether Chicago Metallic or CM Products, Inc. took any steps to mark or label any of the information at issue as being a trade secret or

---

[2] Exhibit B includes only the cover page and pages cited above from the transcript of Mr. Barton's testimony. Should the Court require a complete copy of the transcript, it will be provided.

[3] In addition, this conclusion is also supported by Richard Barton's testimony. Barton appears to concede that the information which was on Barton's laptop was similar to what all employees had. Ex. B at pg. 42 (quoted above).

4

confidential. (See CMBB's responses to requests to admit Nos. 14 through 17 and 21 through 24.)

### DISCOVERY SHOULD BE INITIALLY LIMITED TO WHETHER CMBB EVER ACQUIRED ANY PROTECTABLE INFORMATION.

9.  In order to maintain a trade secret, a party must make reasonable efforts to maintain the confidentiality of the alleged information. *See Arcor, Inc. v. Haas*, 363 Ill.App.3d 396 (1st Dist. 2005), citing 765 ILCS 1065/2(d)(2). Here, the record to date shows that Bryan never had an agreement relating to confidential information with her former employer, was told she could keep her laptop computer when she left, and was never told to strip it of any information despite her employer's knowledge that it contained customer information. In addition, here CMBB has admitted that Bryan's former employer did not take steps to restrict access of the customer information on its computer.

10. At the very least, this record draws into serious question the validity of Plaintiff CMBB's claim. In fact, based on the foregoing, Defendants intend to move for summary judgment as expeditiously as possible.

11. Nevertheless, CMBB has served Lockwood with extensive interrogatories and document requests relating to Lockwood's business practices and its customers and potential customers. (*See* attached Exhibit C and Exhibit D.) Responding to CMBB's requests would require Lockwood to expend considerable time and money that would not be necessary if CMBB cannot establish that it has any rights to enforce.

12. Accordingly, Defendants respectfully requests that this Court limit discovery to those matters relevant to whether Plaintiff CMBB, LLC ("CMBB") ever acquired any property protected by the Illinois Trade Secrets Act. *See U.S. Gypsum v. LaFarge North America, Inc.*, 2007 WL 2071020, *2 (N.D.Ill., July 18, 2007) (pursuant to Rule 26, the Court has the inherent discretion

to limit discovery); *See also Brewer v. Wisconsin Bd. of Bar Examiners*, 2006 WL 3147407 (Oct. 30, 2006 E.D. Wis.) (within court's discretion to stay discovery until resolution of summary judgment.).

        Respectfully submitted,

        **LOCKWOOD MANUFACTURING, INC., and JENNIFER M. BRYAN**

        /s/ Cassandra M. Crane
        *One of Defendants' Attorneys*

Anthony C. Valiulis  (#2883007)
Lorne T. Saeks (#06207595)
Cassandra M. Crane (#6288406)
**Much Shelist Denenberg
   Ament & Rubenstein PC**
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60601
312-521-2000