IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                         EASTERN DIVISION

CMBB LLC,                         )
                                  )
                Plaintiff,        )
                                  )
     v.                           )     No.  08 C 1201
                                  )
LOCKWOOD MANUFACTURING, INC.,     )
et al.,                           )
                                  )
                Defendants.       )

                  MEMORANDUM OPINION AND ORDER

     Lockwood Manufacturing, Inc. ("Lockwood") and Jennifer Bryan ("Bryan") seek summary judgment dismissing the single remaining count of the Amended Complaint filed against them by CMBB LLC ("CMBB").[1]  In that count CMBB asserts that Lockwood and Bryan violated the Illinois Trade Secrets Act ("Act"), but they respond that they could not have done so because the subject matter at issue here does not qualify as a trade secret under the Act.  For the reasons set out in this memorandum opinion and order, this Court grants their Fed. R. Civ. P. ("Rule") 56 motion.

---

    [1] On March 13, 2008 CMBB filed a multi-count Amended Complaint against Lockwood, Bryan and Cainco Equipamentos Para Panificado Ltd. ("Cainco").  On April 29, 2008, pursuant to CMBB's Notice of Voluntary Dismissal, this Court dismissed without prejudice all counts against all defendants, except one charging misappropriation of trade secrets in violation of the Illinois Trade Secrets Act, 765 ILCS 1065 (citations to that statute will simply take the form "Act § --," omitting the just-cited portion of the statutory identification).  On June 10, 2008 this Court granted Cainco's motion to dismiss for lack of personal jurisdiction.  Thus what remains is a single count against Lockwood and Bryan for claimed violations of that Act.

Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

What follows is a summary of the facts, viewed of course in the light most favorable to nonmovant CMBB--a requirement applied subject to any limitations created by the extent of CMBB's compliance (or noncompliance) with the strictures of this District Court's LR 56.1, adopted to implement Rule 56. In this instance no such constraints apply.

Background

In October 2005 CMBB, a manufacturer and seller of commercial baking pans, purchased certain assets from Chicago

2

Metallic,[2] which was itself a manufacturer and seller of commercial baking pans.  Those assets included customer information such as customer names, contacts, telephone numbers, product purchases, pricing and amounts paid ("Customer Information" or "Information").  Whether that Customer Information constitutes a trade secret under the Act is in dispute and is the primary issue in contention on the current motion.

CMBB has asserted that Bryan obtained Customer Information during or after her employment with Chicago Metallic and that she then provided that Information to Lockwood.  Bryan had once been employed as Chicago Metallic's Marketing Manager, but her employment with Chicago Metallic ended in October 2005, sometime shortly after the CMBB purchase.  Upon her separation Chicago Metallic allowed her to keep possession of the laptop computer she had used during her employment.  In January 2006 Bryan began working as National Sales Manager for Lockwood (another seller and manufacturer of commercial baking pans), and CMBB maintains that Bryan supplied Customer Information to Lockwood, which then used that Customer Information in its business.

Defendants counter that no matter what Bryan or Lockwood did or did not do with that Information, the Information itself does not qualify as a trade secret under the Act.  Simply put,

---

[2] Chicago Metallic was a division of C.M. Products, Inc.

defendants argue that Chicago Metallic and CMBB did not adequately protect the Information, so that the Act cannot apply and CMBB's case must necessarily fail.

### Were Reasonable Steps Taken To Maintain Confidentiality of Customer Information?

Any determination as to whether summary judgment is appropriate for the reasons defendants expound requires a review of what steps, if any, Chicago Metallic and CMBB took to maintain the Information's confidentiality. Information is considered a trade secret under Act §2(d) if it is the subject of reasonable efforts to maintain its confidentiality (emphasis added):

> "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or <u>list of actual or potential customers</u> or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and
>
> (2) <u>is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality</u>.

Determination of "[w]hether the measures taken by a trade secret owner are sufficient to satisfy the Act's reasonableness standard ordinarily is a question of fact for the jury" (<u>Learning Curve Toys, Inc. v. PlayWood Toys, Inc.</u>, 342 F.3d 714, 725 (7th Cir. 2003)). As a result (<u>Rockwell Graphic Sys., Inc. v. DEV Indus., Inc.</u>, 925 F.2d 174, 178-79 (7th Cir. 1991):

4

only in an extreme case can what is a 'reasonable' precaution be determined on a motion for summary judgment because the answer depends on a balancing of costs and benefits that will vary from case to case and so require estimation and measurement by persons knowledgeable in the particular field of endeavor.

Even so, those limiting directives--that reasonableness is "ordinarily" a jury question and that only the "extreme case" is properly decided on summary judgment--do not at all preclude the grant of summary judgment here. To the contrary, <u>Tax Track Sys. Corp. v. New Investor World, Inc.</u>, 478 F.3d 783, 787 (7th Cir. 2007) has most recently confirmed:

> In some circumstances, however, it may be readily apparent that reasonable measures [to maintain confidentiality] simply were not taken.[3]

And the ensuing analysis shows that this is just such a case--that no reasonable jury could find that Chicago Metallic took reasonable efforts to keep its Customer Information confidential so as to warrant protection under the Act.

According to defendants, they are entitled to summary judgment because neither CMBB nor Chicago Metallic took necessary steps to protect the Customer Information as a trade secret. They say for example that Chicago Metallic did not convey to its

---

[3] [Footnote by this Court] CMBB's Mem. 1, responding to the Rule 56 motion, urges that the motion should be denied because "Defendants have not cited a single case where a court has ruled as a matter of law and granted summary judgment on the basis that the steps taken were not 'reasonable under the circumstances.'" But <u>Tax Track Sys.</u>--surprisingly not cited by either party--has done just that, effectively puncturing CMBB's balloon.

5

employees that the Information was confidential in that sense. Nor did Chicago Metallic safeguard the Information under any established policies or procedures. Instead it permitted not only its employees but also independent sales representatives to keep the Information even after those relationships had terminated. Moreover, CMBB also failed to protect the Information through its failure to ask Chicago Metallic to represent or warrant that the Information was confidential or constituted a trade secret. Neither did CMBB require Chicago Metallic to destroy any copies of the Information still in its possession or require Chicago Metallic and its personnel to agree to stop using it.

All of those deficiencies are directly confirmed by the uncontroverted evidence proffered to this Court on the current motion. Hence no reasonable finder of fact reviewing those undisputed material facts could reasonably conclude that Customer Information was maintained in such a way as to elevate it to trade secret status under the Act. It is undisputed, for example, that Chicago Metallic did not communicate to its employees that Customer Information was a trade secret or even that it was considered confidential in any limiting sense, nor did Chicago Metallic have any specific agreements or even any written policies limiting the use of Customer Information by employees or sales representatives (who, it is also undisputed,

6

were not employees). Hard copies of Customer Information were not marked in any way to indicate that they were considered confidential or constituted a trade secret.

As for Chicago Metallic employees who left the company, there was likewise no written policy or procedure as to what those individuals were or were not to do with Customer Information or other property. In fact, after she departed Chicago Metallic Bryan was allowed to keep the laptop she had used as an employee, and Chicago Metallic never asked her to remove any information from her laptop or otherwise conditioned her use of Customer Information. Although Chicago Metallic and CMBB may disagree as to whether Bryan's laptop actually contained Customer Information or as to whether the Customer Information that she provided Lockwood was obtained via some other means, all that is beside the point. Chicago Metallic's failure to <u>ensure</u> that Bryan's laptop was stripped of Customer Information when she left the company goes to show that it did not treat such Information as confidential or a trade secret.

In light of Chicago Metallic's failure to convey to its employees that Customer Information was confidential, it is unsurprising that CMBB attempts to underplay the importance of communicating that message to employees. CMBB cites, for example, <u>Peripheral Devices Corp. II v. Ververs</u>, No. 95 C 3754, 1995 U.S. Dist. LEXIS 11389, at *24 (N.D. Ill. Aug. 8) for the

7

proposition that an employer's failure to have its employees sign confidentiality agreements is not dispositive of whether the employer took reasonable efforts to keep information secret. But CMBB improperly contorts that opinion to suit its purposes. <u>Peripheral Devices</u>, <u>id</u>. held that the existence of confidentiality agreements, while not wholly dispositive, provides strong evidence to <u>support</u> a finding that the covered information was kept confidential. If anything, <u>Peripheral Devices</u> notes the important role that confidentiality agreements can have in the inquiry. It neither condones their absence nor suggests that such absence may not be strong evidence of nonconfidentiality. In fact, in cases that address whether an employer took reasonable steps to protect information as a trade secret, the presence or absence of confidentiality agreements or other means to convey confidentiality to employees often has a significant and predictable bearing on the outcome of the case (see also, e.g., <u>HotSamba, Inc. v. Caterpillar, Inc.</u>, No. 01 C 5540, 2004 WL 609797, at *3 (N.D. Ill. Mar. 25); <u>Liebert Corp. v. Mazure</u>, 357 Ill. App. 3d 265, 279, 827 N.E.2d 909, 923-24 (1st Dist. 2005)).

CMBB attempts to give life to its beleaguered case by seeking to identify steps that, it contends, show that reasonable efforts were taken to maintain the Customer Information as a trade secret--but none of those steps really affects the

analysis. For example, while defendants point to the breadth of distribution of Customer Information among employees and nonemployees alike, CMBB argues that it shared Customer Information only on an as-needed basis. Similarly, defendants criticize the loose guarding of hard copies of the Customer Information, but CMBB responds with an attempt to defend the security measures that purportedly protected those hard copies.

Because Rule 56 requires the facts to be viewed in the light most favorable to nonmovant CMBB, this Court credits whatever facts support those CMBB positions. But given the already-described failures on the part of Chicago Metallic and CMBB to maintain the Information as confidential in the trade secret sense, those facts and CMBB's positions based on those facts are truly immaterial (that is, non-outcome-determinative). While protecting databases with passwords and locking buildings that housed hard copies of Customer Information are certainly good ideas, those steps fall far short of creating genuine issues of material fact in light of both companies' failures to maintain the integrity of Customer Information as trade secrets under the criteria that are marked out by the Act.

CMBB also asserts that it knows of no incident in which, aside from Bryan's alleged conduct, Customer Information was improperly accessed or shared with third parties. But such an effort to reason backward from that fact--a sort of post hoc ergo

9

propter hoc argument--does not at all show that the required <u>affirmative steps</u> were taken to prevent disclosure. It merely reflects that CMBB had the good fortune that other employees decided not to (or perhaps had no occasion to) retain and disseminate Customer Information. Nor does it advance CMBB's cause to assert that other employees may have viewed Customer Information as confidential. Impressions on the part of lay employees do not at all control the legal question of trade secret protection.[4]

It similarly makes no difference that Chicago Metallic deleted computer records containing the Customer Information and delivered hard copies to CMBB after the asset sale. That action by Chicago Metallic does nothing to show that CMBB then acted affirmatively to protect the Customer Information that it purchased. Instead the CMBB purchase agreement contained no requirement that Chicago Metallic take steps after the closing to ensure that its employees or sales representatives would destroy or otherwise remove any Customer Information in their possession or control--and indeed Chicago Metallic took no such steps. While the purchase agreement did include a nondisclosure

---

[4] Thus CMBB Mem. 2-3 quotes, from Bryan's deposition, her statements that while employed at Chicago Metallic she never shared its customer information documents with any competitors or would have felt at liberty to do so. But that entirely proper mindset at the time that she owed duties of loyalty to CMBB as an employee sheds no light on the situation once that relationship ceased to exist.

provision that barred the "Seller" (C.M. Products, Inc., hence Chicago Metallic--see n.2) from providing any "Confidential Information" (including at least arguably the Customer Information) to a third party, no restrictions were imposed on the post-sale use of Customer Information by Chicago Metallic employees.

## Conclusion

To begin with, Chicago Metallic did not take reasonable steps to keep its Customer Information confidential. Selling that Information to CMBB did not suddenly transform it into a trade secret, especially under the circumstances presented here--circumstances in which the purchase agreement included no restrictions on post-sale use by Chicago Metallic employees, nor was there any representation or warranty that Customer Information constituted a trade secret. And CMBB's post-sale activity did nothing to support the notion that the Information had that status.

Instead, in this case it is "readily apparent that reasonable measures [to maintain the confidentiality of Customer Information] were simply not taken" (Tax Track Sys., 478 F.3d at 787). While Chicago Metallic may have locked its doors and guarded Customer Information with passwords, it did nothing to communicate to its employees that Customer Information should be kept confidential or secret. It is not enough for Chicago

11

Metallic to say it trusted its employees and that no breach had ever occurred before. Nor is it enough to say that employees may generally have considered the Information to be confidential in nature.

What is critical instead is the absence of any showing that Chicago Metallic took reasonable <u>affirmative</u> steps to prevent dissemination of Customer Information.[5] It failed to inform its employees that it considered Customer Information to be a trade secret. Nor did it do anything to see that former employees and others who severed their ties with Chicago Metallic returned, destroyed or agreed not to use Customer Information. Chicago Metallic appears rather to have relied on luck and a somewhat naive faith in employee-employer good will, rather than taking the necessary affirmative and calculated steps to safeguard what it now characterizes as valuable and secret information.

---

[5] CMBB attempts to bolster its argument that reasonable steps were in fact taken by arguing that as a small company Chicago Metallic was under a less rigorous burden to take such protective steps. But CMBB's attempted reliance on <u>Elmer Miller, Inc. v. Landis</u>, 253 Ill. App. 3d 129, 625 N.E.2d 338 (1st Dist. 1993) for that argument is misplaced. Because <u>Elmer Miller</u> involved an employer with just two employees, the court there held that "reasonable steps for a two or three person shop may be different from reasonable steps for a larger company" (<u>id</u>. at 134, 625 N.E.2d at 342). Chicago Metallic and CMBB are of course much larger companies (involving some 200 employees) than the small tailor shop in <u>Elmer Miller</u>. And even in <u>Elmer Miller</u>, though the employer did not require its employees to sign non-disclosure, confidentiality or trade secret agreements, it did at least inform its employees upon hire and termination that the information at issue was confidential (<u>id</u>.). Chicago Metallic failed to do even that much to protect its Customer Information.

It is not enough for CMBB to declare that the Information is valuable. It must also have been treated as secret. It was not. In sum, there is no genuine issue of material fact, and Lockwood and Bryan are entitled to a judgment as a matter of law. Their Rule 56 motion is granted, and this action is dismissed.

                                                _____
                                                Milton I. Shadur
                                                Senior United States District Judge

Date: June 24, 2009